Good morning, your honors. Todd Burns on behalf of Mr. Olloque. Pardon me? Mr. Olloque. Olloque. All right. Thank you. I didn't get even close. My plan is to focus on the 924C conviction for possession of a firearm and furtherance of a drug trafficking crime, unless the court points me in another direction. In the briefs, parties have focused on the point in time in which there's an officer out in the parking lot and he sees this bag which turns out to have methamphetamine come floating down and then subsequently looks up and sees Mr. Olloque throwing a gun out the window. I think it's better, it crystallizes the appropriate analysis here So we're really talking about the sufficiency of evidence to convict on count two? That's right. Did you ever make a motion for acquittal? I was not trial counsel, no trial counsel did. Oh, I'm sorry. Did counsel ever do it? No, no he did not. So what then is my standard of review on that particular issue? Well, I think essentially it's still the sufficiency test that's set out by the Supreme Court in Jackson as indicated in my brief, that's so for two reasons. But the review is very deferential, isn't it? It is. Requiring only reversal upon plain error or to prevent manifest injustice? Well, as this court has said in a couple of cases, given how high the standard is for showing a sufficiency, insufficiency of the evidence it's hard to see how even plain error review would make a difference because if someone could meet the Jackson... But then you would agree this is pretty, this is one standard above deferential if there is such a thing in a sufficiency of evidence case. Well, I don't agree that it makes any difference because of what the court has said in Vizcarra-Martinez and Alvarez-Valenzuela that applying plain error review just wouldn't make a difference because the test is already so high for insufficiency. Furthermore, as an alternative, I raise an ineffective assistance of counsel claim because there's just no good reason not to make a Rule 29 motion at the close of evidence. There's no downside to it. It plainly is just something counsel just forgot to do. And so therefore, if you have the deficient performance aspect of ineffective assistance, you go to the merits, which is basically de novo or the Jackson standard all over again. So I don't think it makes a difference. We've heard you talk about that. I'll ask you one further question. It's my understanding then that what we're really concentrating on is whether the government had enough proof in the record that there was a possession of firearm in furtherance of the crime. Because the first two elements are pretty much given. We only are questioning the third element, right? They had to prove participation in a drug trafficking crime. They had to prove that he possessed a firearm. But the third is that the possession was in furtherance of the crime. That's right. I think the possession and the in furtherance bleed together a little bit in my argument, and I'll try to explain why I believe that's the important point in time to focus on here for this analysis is the time at which the police knock on the door and yell police. Because based on what happens after then, it's apparent that Mr. Yoki's intent at that point is to get rid of the drugs and to get rid of the gun. That's what he does. How long did it take him to do that? Well, according to trial testimony, it took up to two and a half minutes. Two and a half minutes to get it out the window? Yes. And because at that point in time, he obviously wants to get rid of the drugs, he can't be convicted of the drug offense for that period of time because he's not possessing the drugs with intent to distribute them. At that point, he's possessing them with the intent to get rid of them. So therefore, we can draw from that an inference that the gun and the drugs were close enough together he could put them together and get them out the window in two and a half minutes. I think that's the best that can be drawn. Counsel, when Judge Smith's done, I have a question for you. No, no. Go ahead, Judge Gould. Well, my question is just this. It's the Jackson Standard what a rational jury could conclude beyond a reasonable doubt. So give me your best argument why a rational jury could not conclude beyond a reasonable doubt that if he's got the gun there, that he's using it in connection with his drug dealing. Well, as this court made clear in Hector and in some of the other cases, but fairly clear in Hector, just having the gun in close proximity or the same place isn't enough. The gun has to be possessed in furtherance of. And as this court has also made clear in Hector and Rios and Kraus, if the gun is for example in the trunk of a car, that's not considered accessible enough to alone support that it's possessed in furtherance of. Thanks. No, I understand that. But I'm asking why couldn't a rational, this is just a sufficiency of evidence issue here, why couldn't a rational jury conclude that he had the gun and it was in furtherance of the drug dealing? That is, it wasn't, why couldn't a rational jury conclude they don't think it's likely the gun was, you know, just on the premises tucked away in the safe or something where he couldn't use it? Why couldn't a rational jury conclude that? I think there are two related answers to that. One is that all the evidence shows, again during the relevant time period, which is before there's the knock on the door, is really that there is a gun in there and that he's able to use it within a half minute's time. So when you look at these other cases which talk about if the government wants to establish the in furtherance of by pointing to the fact that the gun is strategically placed so that it's accessible so that it can be used in furtherance of the crime, the gun's got to be pretty quickly accessible. It can't be, you know, in a storage room that's not easily accessible. It can't be in a locked safe. It's got to be pretty quickly accessible. And there has to be the burden of showing that the gun is quickly accessible beyond a reasonable doubt. And the government didn't introduce any evidence of that. The best the government could say is it introduced evidence that the gun was accessible within two and a half minutes. And as I pointed out in my brief, I mean, I could have a gun over at my neighbor's house and go get it and come back with two and a half minutes. Clearly that's not strategically accessible to facilitate. You're faster than I am. Well, before it probably would have been a minute and a half. I'm slowing down. And, you know, the examples that are pointed out in the case law are such as if it's kept in a safe so it takes a little bit of time to get to. If it's kept in your trunk so it takes a little bit of time to get to. You know, obviously someone could get to a gun in their trunk a lot faster than two and a half minutes. So, you know, could the jury speculate, oh, well, maybe the gun could have been here or maybe the gun could have been there. They could speculate as to that. But that is not the government introducing affirmative evidence to meet its burden beyond a reasonable doubt. The only affirmative evidence, there's no evidence as to where the gun was. The only thing, the best the government can point to is he could get it within two and a half minutes. And that doesn't mean that it's quickly accessible to facilitate a drug crime. You know, I would point out that the, it's interesting to note here what wasn't charged. The offense, 924C offense, one of the things the government could charge was that he carried the gun during and in relation to a drug trafficking offense. Well, they didn't charge that. They didn't, you know, they focused in their briefs on the fact that he's got the gun in his hand when he throws it out the window. Well, obviously the charging decision there reveals, you know, when he's throwing it out the window, he is not carrying it in relation to drug trafficking crime. He's trying to get rid of it at that point. So again, you've got to focus to before the knock on the door. You can draw an inference from that. You can draw an inference going back from that particular point in time that he did possess it in relation to the drug offense. When he throws the gun and the drugs out the window, I understand your argument that he didn't intend to possess with intent to distribute the drugs and he was just trying to get rid of the gun. But you could draw, why can't the rational jury draw the inference that the reason he's throwing them out together was because they were both related to each other? Well, I think the reason for that is the best that can be said is he's trying to dispose of the gun and he's a felon and he can't have the gun. And the fact that he can't have a gun, the case law makes clear, is not alone. Illegal possession of a firearm is not alone enough to show that he's possessing it to further the drug trafficking crime. It worries me just a little bit, your argument with that. It seems as if you're saying, if he hadn't have been a felon, this would be an easy case. But since he's a felon, he could throw out the gun for a different reason than using the gun, using it for drugs. I mean, that's the worry that I have with that part of your argument. I don't think that's necessarily so. I think that would rely on drug traffickers having a better understanding of the law than they probably do. Even if they're not a felon, if they've got a gun and drugs and the police show up, rationally they might think, geez, I want to get rid of both of these things because I don't want to get caught with either of these things. Number one. Number two, it would be sensible. I think central to your whole argument here is, this guy's a felon. So as a felon, he has a different reason for getting rid of this gun than would the normal drug dealer. Well, again, I think that the normal drug dealer, if the police come knocking, they'd probably want to get rid of the gun as well as the drugs for two reasons. They probably think they shouldn't have the gun. All I'm trying to do is get you to focus on the argument because I'm back again on was there sufficient evidence. And this was one niche in what you said that I worried a little bit about. So I wanted you to explain that. And I think you have. But I'm just worried about that being a basis, a structure of your argument. Well, I don't know that it's, again, I think that there are other good reasons a person caught in that situation would want to get rid of the gun other than, oh, you know, I'm a convicted felon. Such as, I don't want to have an armed confrontation with the police, so better to get the gun out of here. Or I probably just shouldn't have the gun and the drugs be caught with them together. There could be a synergistic effect there without them knowing what that synergistic effect might be. I think believing that he's thinking, oh, you know, I'm a felon and so I have to get rid of this because I'm a felon. I don't think that's probably what goes through their mind at the time. I think the police are here, what do you get rid of? You get rid of the gun, you get rid of the methamphetamine. And now he's got the added incentive of getting rid of the gun because he is a convicted felon. But I mean, I guess your Honor's it creates, the convicted felon is somewhat in a more beneficial position in that circumstance. Well, that was the worry that I had about your argument. That somehow you were using the convicted felony as a good basis for having the arguments you're making. No, I don't think it relies on that. I think basically all you've got to do is look at the fact that he throws it out the window and it's apparent that he's trying to get rid of the gun for whatever reason. And that anyone in that situation who's trying to get rid of the gun, just like they're trying to get rid of the drugs. If I take you to Rios and Hector and Cruz, how do you differentiate your case from any one of those three? Well, I think Hector is probably, you know, Rios and Hector are both probably the most useful because they're very good at sort of going through the legislative history and the different case law. I understand that, but let's go to the facts. And I think Hector makes a good point, which they say in Hector, look, the evidence shows that he's dealing drugs out of that location, which there was no evidence in this case showing that he was actually dealing drugs out of the hotel. I'm not sure that you can say that. He'd been in the hotel three weeks. The clerk says various people went to his room and would not stay that long. He had scales there. But he could be selling it at other locations. He had an ID. He had a pipe for smoking meth. He had a pouch with makeup. And let's not go with the bullets because he has a hypodermic needle. He has a syringe. He has one mechanical and two digital scales. So I'll set that aside. Completely set that aside. Hector talks about that the gun is positioned in a way where it's on his path when he's at the door and then he goes to get the drugs. And that basically it only would take him two seconds to get the gun because to cover the whole distance across that room, his space there, 700 square feet, takes four to five seconds. So he basically can get to the gun in two seconds and it's along the path of his dealing the drugs and it's right under a futon. He can grab it quickly. And then Hector says but that's not to say that just because we're dealing with a small space that that's enough. The gun has to be quickly accessible. So therefore a gun that's in the lock safe, I think, they specifically contrast it with the lock safe. Counsel, is there any evidence that was submitted expert testimony or something that could show that the gun in fact had been in the lock safe or just a blank? No, it's just a blank. The only evidence is basically that he can get the gun within two and a half minutes. In closing, the only thing the government relied on is that he possessed the gun and the drugs apparently around the same time as he's throwing them out the window. But of course, I open with the fact that his intent at that point isn't to possess the gun to further the drug trafficking crime, it's to get rid of it. Not at that time, right? I don't know about most, but many hotels have safes built in. It's a regular thing at lots of hotels to have safes. So if someone's dealing drugs in such a hotel room and they're arrested and there's a gun in the room at that time, does that mean the government can never prove the gun was used in connection with the drug sales? No, I think that there clearly are ways the government could prove it. I mean, the most obvious way would be anyone else who was in the room or had dealt with him in those circumstances. Absent a witness who says, you know, I bought drugs from this guy and I saw the gun on his hip. Absent that, does that mean the government cannot prove, show beyond a reasonable doubt that the gun was used in connection with the drug sales? I think another obvious way would be if they could establish that he was able to get to the gun a lot more quickly than just a two and a half minute window. By the way, was anyone standing there with a stopwatch or is this two and a half minutes, just somebody saying I think it was two and a half minutes? Well, it's the officer who's making the entry to the various points in the room, estimating how long it took, how long it took, and that's what the jury heard. You know, I got to the front door, we knocked on the door, waited about 45 seconds, heard some moving around, no one came, they had the key, they opened it, they go in and then they're in the living room, kitchen area, they go to the next door, knock on the door, here's some moving around, eventually break down the door and then finally the two of them come out about a minute, 45 seconds after that. And I take it it's not possible to in effect take judicial notice of the fact that guns and drugs go together and that somebody who appears to be regularly dealing in drugs would have a gun to simply, because it's necessary to protect his business. Well, there was expert testimony to the fact that drug traffickers sometimes use guns as part of their, protecting their business. The Ninth Circuit case law is quite clear that that's not sufficient to make this showing. Maybe by itself, but it's certainly a reasonable piece of circumstantial evidence. Sure, but then I think still to get where the government needs to be they've got to show some evidence that the gun was strategically placed such that it was quickly accessible so that a jury can draw an inference. That gun is where it is because the defendant put it there so if a drug deal goes bad or something of that nature, he can get it quickly and respond. And two and a half minutes, just if you look at the safe instance, which was Rios, a safe, or Bailey in the legislative history where they talk about a trunk of a car and this Court has talked about that, that's not accessible enough. That just takes too long to get to. Two and a half minutes is clearly longer than it would take to get to the gun in this case. And I point out, I'm not sure Judge Gold, if you were meeting to indicate that there was a safe in this room, in the bedroom, there was. And one thing that's interesting is that there is, the safe is open and a holster, revolver holster is found on the floor. Makes it look like maybe someone quickly went to the safe, opened it, got the gun out, and then as they're disposing of it, drops the revolver holster. I mean, who knows? But the point is, all we know is two and a half minutes. Nothing more. Thank you. Thank you. You've had your time for argument and we appreciate it. Counselor, we're ready to hear you. Good morning, Your Honors. May it please the Court, Alison Westfall Kong for the United States. The defendant's conviction and sentence should be affirmed. All three of the claims by the defense should be rejected. I'll focus on the sufficiency claims since that's the one that the defendant has devoted his time to. So, given the standard of review, the Jackson Standard, let's first just walk through kind of all the facts and all the inferences. Because in re-looking at the record, it looks like it's actually less than two and a half minutes. Less than two minutes, even. That he has the gun and the drugs in his possession just before he's discarding them from the window. We have testimony that the defendant is at his motel door and about after 30 to 45 seconds, they enter the motel using the key to find a locked door where the defendant and his girlfriend are behind. And we learn that that's the bedroom and the bathroom. So right there, after 30 to 45 seconds, the defendant already has the gun and the drugs in the bedroom or bathroom area. And I think the jury could infer one of two things. Either that given the very short time frame, the gun and the drugs are already back stored in either the bathroom or the bedroom. Or that the gun was so strategically located that even in that very short time frame, the defendant was still able to kind of leave the bedroom, bathroom area, get the gun very quickly, and then lock the door behind him. There's also testimony from, even though we focused on kind of two and a half minutes as the starting point in adding up all of Officer Crumbuck's testimony, there is testimony from Officer Crumbuck that it actually took approximately two minutes from the time the defendant and his girlfriend are under arrest. So taking the facts most favorably to the government, he has the gun and the drugs in less than two minutes. The jury can further infer that it's even quicker than this, based on the testimony from Officer Peterson. And he's the officer who actually observes the gun and the drugs falling out of the window. Officer Peterson testifies that he first hears the sound of glass breaking, which presumably is the methamphetamine pipe being thrown out the window. And then he testifies that about 15 to 20 seconds later, he sees the bag coming out the window. So from that, the jury could infer that the defendant is already in the bathroom discarding items including the drugs, including the methamphetamine pipe, including the gun 15 to 20 seconds before the bag is thrown out the window. So all of these things suggest that it was a very short time frame with which the defendant was able to get the gun, which could lead the jury to infer that it was strategically located. We also hear testimony that the defendant is disheveled when he's put under arrest. He's only wearing his boxer shorts. The jury could infer that the cops surprised him and that he was either asleep or not fully conscious, making it all the more impressive that he's able to access the gun in so quick a time frame. And I would argue, contrary to what the defense counsel was originally arguing, that there was ample evidence from which the jury could infer that drug trafficking was occurring in this motel room. In addition to the testimony from the motel clerk that people would come and leave a short amount of time later, which is consistent with drug trafficking, there's items found all throughout the motel apartment that are consistent with drug trafficking. We find scales in the living room. In the bathroom, there's $210 in cash. There's fake identification. There's a methamphetamine pipe. The bathroom is also where, obviously, the drugs and the gun are disposed from. There's a digital scale and large mechanical scale found in the living room. Bullets found in the kitchen. It appears that the drug trafficking operation is happening kind of throughout the entirety of the apartment. There's simply no evidence to suggest that the drugs are isolated to one small part of the motel. The guns are isolated to another small part of the motel, such that it would be irrational for the jury to conclude that the gun was used in furtherance. And I just want to distinguish this case from Mann, which is the case with the campsite where the key is in the sleeping tent and the drugs are in the... I'm glad that you came up with Mann because that was going to be my question. I look at what we have here. I look at Rios. I look at Mann. I look at Hector. I look at Krauss. Mann seems to be your biggest problem. So in Mann, the key... First of all, we have kind of a campsite. One tent is a sleeping tent. One tent is the actual tent where the drugs are being manufactured. There's a key on top of a propane gas tank in the sleeping tent. And then there's a truck, which the defendants pull up in and park outside, and there's a locked safe in there where the gun is found. And just imagine... So in this situation, he's in this kind of enclosed motel room. The cops show up, and within 30 to 45 seconds, he already is in kind of a locked area with the gun and the drugs. So I think this is very equivalent to a situation you'd imagine you'd need a gun in as a drug trafficker. A rival drug trafficker tries to break into your motel room, steal the drugs. And in our case, in 30 to 45 seconds, he's able to get that gun and have it behind a locked door to protect himself and to protect his drugs. In Mann, if these individuals are sleeping in the campsite and they're kind of bombarded by a rival drug trafficker, they're out of luck. They can't get to that gun easily, because they'd have to go all the way outside to the truck, and they already have people outside of the campsite. So I think a lot of it has to do with the fact that the motel room is this enclosed space that's all together. And a rational jury could find that 30 seconds is a very fast time to effectively break into the motel room, which is effectively what the cops did, legally, of course, and with the authorization of the motel. But I think that that's what makes this so different than Mann. Also, in Mann, we know for a fact that the gun is stored behind this locked safe. In our case, it's purely speculative that the gun is in some kind of locked safe. What we do know is that in a very short amount of time, the defendant was able to get the gun and able to have it with him, with the drugs, such that the jury could infer that the gun was strategically placed so that he would be able to protect the drugs in the event of some kind of break-in or in the event that the drug deal went wrong and something happened. What about Krauss? Krauss, I would say, is a good case. You say it's a good case for you, but what do you need in Krauss to make your argument? Well, so, I think what's...I mean, Krauss says that the evidence is sufficient if there's a nexus between the gun and the drugs. The nexus can be established by the fact that it's strategically located, accessible, or proximate. I think that we actually have all three of these based on the timing and based on all the other facts. I would also note that in Krauss, they make a lot of the fact that there are five high-caliber firearms plus ammunition located within easy reach in a room containing a substantial quantity of drugs and drug-trafficking paraphernalia. We don't have that here. Well, we don't have the five high-caliber firearms. I mean, we do definitely have a lot of drug paraphernalia, a lot of bullets and knives discovered in a very short space. So I would suggest that the facts, while perhaps not as good as Krauss, are very similar. This is not a case where there was only this one baggie of drugs and the gun. There was, you know, three baggies that were thrown out of the window. There were two methamphetamine pipes, three scales, 22 bullets, I believe, and found in separate places. I think 11 bullets are found in the kitchen and the other 12 are found in the bedroom. And so I think that given all of that, the jury could certainly rationally conclude that there's a nexus between the gun that's thrown out of the window and the drugs. He's able to get it in a very short amount of time. And just turning to Hector,  But we really don't know how long it would have taken the defendant to get it. There is testimony that, oh, it would have only taken, you know, 45 seconds to walk across this apartment. But in this case, we do have testimony that the Motel apartment is small. And while we don't know exactly where the gun was stored moments before the officers arrived, what do we know? After 30 seconds, the gun is already in either the bedroom or the bathroom. And in less than two minutes, probably more like a minute or a minute and a half, in light of Officer Peterson's testimony, the defendant already has the gun and the drugs in his hands, so he's able to throw them out the window. Now, I would agree that at the moment he's throwing them out the window, he's not engaging in, you know, possession with intent to distribute. He is probably trying to get rid of the drugs. But from that fact, the jury can still infer that the gun was strategically located and easily accessible. And based on that, I would argue that under the sufficiency standard, the government should prevail. Turning briefly to whether there is, whether it matters whether we apply plain error review or de novo review, given the kind of lenience of the Jackson standard, I would just suggest that even if the court finds that this is a close case, it's not identical to Mann. And so to the extent that it's a close case, I would say that under plain error review, there isn't plain error here for a jury to conclude that the evidence is sufficient. So I would agree that the standard is very lenient to the government, but I would still say under plain error review, since there's no motion for acquittal below, this would not be plain error. Given the facts of Krauss, given Hector, this is kind of the next case in that line, and it's reasonable for a jury to assume that the gun was easily accessible. Do you want to address any of the other issues? Sure. So I'll turn first to the juror bias claim. The comments that the defense complains of, I think even taken in isolation, do not demonstrate impermissible juror bias. They suggest the viewpoint that the reasonable doubt standard does result in people getting away with crime. And the first juror's comments actually seem more directed to the case where evidence is tainted or suppressed, and there's simply no indication that that was at issue in this case at all. And so the comments aren't directed at this defendant, at this prosecution. And then the second juror's comments of partial agreement with the first, I think are much too vague and ambiguous under this Court's Mitchell decision from 2009 to find impermissible bias. Do we know, as far as I can tell, whether these jurors, I can't tell, am I wrong, that we don't know if these jurors actually sat? That's correct, Your Honor. We do not know. Because they're not identified by number, and they could have been essentially challenged. That's correct. And what I did do was, in looking through the record, I can say this. There were 24 jurors in the original veneer. Twelve of those jurors were dismissed. Two for cause, ten for peremptories. I also think, from the kind of discussion that Defense Counsel has later with Prospective Juror 13, it's likely that Prospective Juror 13 is the first juror who makes the comments about the reasonable doubt standard. And she was dismissed by the defense. But you are correct that I don't think we can definitively determine whether these jurors made it on the jury, which I think makes this case different than a lot of the other juror bias cases, where you actually know that there's potentially the presence of a biased juror. And to the extent that there are these deficiencies with the record, I would just note that, you know, I'm sure it wasn't intentional, but it was during the defense voir dire that this comes up. And so it's the defense that doesn't identify them. And so any kind of deficiencies with the record should lie with the defense, and not the court or the government. I understand that Mr. Burns has also challenged Almondarez-Torres, but we don't have a lot to say about that, so I doubt you need to talk about that. I mean, we can't say too much about it unless it went on bonk. So do you have anything about the increase of the mandatory minimum? Sure, just very briefly. I'll turn to the merits in a second because I think even if you turn to the merits of this claim, you can reject it. This is a felony drug offense. But just briefly in deciding whether, I mean, the procedures in 851B and C I think are there so that a defendant has a reasonable opportunity to contest, you know, the validity of these prior convictions, the allegation of a felony drug offense. And here it's simply not the case that the government sandbags the defendant with this information. The information is filed September 7, 2011, over a year before the trial. The government's sentencing position is filed April 26, 2012, several months before or over a year before the sentencing, several months before the sentencing. And so the defendant had ample opportunity to challenge every aspect of all three of the convictions asserted in the information, including the allegation in each of the counts that it's a felony drug offense. But turning to the merits, the count one of the information, possession of a controlled substance while being armed with a loaded firearm is plainly a felony drug offense. The definition of felony drug offense is, you know, an offense punishable by imprisonment for more than one year that prohibits or restricts conduct relating to specified controlled substances, including stimulate substances such as methamphetamine. And so it's very different from the crime of possessing a weapon while committing a felony. A person convicted under California Health and Safety Code 11370.1 has engaged in conduct that categorically relates to a controlled substance. You can't be convicted under that statute unless you've while you were armed with a firearm. So given the breadth of the phrase relating to, as interpreted by this court in numerous decisions, this is, you know, a felony drug offense. Even under the defendant's contention that it has to be primarily a drug offense as opposed to primarily a firearms offense, which doesn't have support in the statutory definition, I would still contend that this actually is primarily a drug offense. It's codified in the California Health and Safety Code where most drug offenses are codified, whereas firearms offenses tend to be codified in the California Penal Code. And the primary conduct here that modifies the word person is the unlawful possession of a controlled substance. So if your honors don't have any further questions, I would just ask the court to affirm the conviction in the sentence. Thank you for your argument. Thank you. Mr. Burns, I gave you a lot over, and she didn't even come up to the point, but my good presiding judge has consistently given me the business to give at least 30 seconds rebuttal, so I'll do it. Thank you, your honor. I know you wouldn't have got any, but you got Judge Gould. Very permissive here in California. I'll take less than that. I'm surprised to hear this 30 second time frame in accessing the gun, because in the government's answering brief, they acknowledge, they wrote on page 35, that Mr. Ioki had at most two and a half minutes to obtain the drugs and the gun and throw them out the window. Excerpt of record 90-92 talks about the time frame. Since we don't know where the gun was, it's hard to say exactly how when in that period of time he obtained it, but that's sort of the point. It's the government's burden, and it could have been any time within two and a half minutes. Thank you. All right. Case 12-50435 USA versus as Mr. Burns suggested, is submitted. And we will move then to the next case, 12-56105 Fisher versus Brown. That case is submitted on the briefs, and so therefore we will move to case 12-56112 Jimenez versus Allstate Insurance Company.
judges: Korman, GOULD, SMITH